PAGÁN, LÓPEZ & CO. *v.* MAYAGÜEZ DOCK AND SHIPPING COMPANY.

APPEAL from the District Court of Mayagüez.

No. 782.—Decided May 22, 1912.

BILL OF LADING — CONSTRUCTION OF CONTRACTS — DISCHARGING MERCHANDISE-SHIPPERS.—This case turns upon the construction placed upon clause 5 of the bills of lading which shippers sign when shipping merchandise by The New York and Porto Rico Steamship Company. . It was held that according to said clause said steamship company has no right to employ lighters for discharging merchandise for account of the consignee when said consignee offers to receive the merchandise at the ship's side at the commencement of discharging in lighters furnished by said consignee.

ID.—CONSTRUCTION OF CONTRACT—SINGLE CLAUSE OF CONTRACT.—In construing a contract the significance of one part or single clause thereof should not be relied upon exclusively, but the document should be considered as a whole in order to ascertain the intention of the parties thereto when the contract was made.

ID.—DISCHARGING MERCHANDISE—RIGHTS OF SHIPPERS AND CARRIERS.—According to the doctrine expressed in the foregoing paragraph and construing as a whole the bills of lading signed by shippers of merchandise by The New York and Porto Rico Steamship Company it results that the consignee has the right to receive the merchandise at the ship's side as soon as it is discharged and that the company or its agents have the right to employ lighters to receive the merchandise when the consignee does not receive it at . the ship's side as soon as it is ready to be discharged.

ID. — CONSTRUCTION OF CONTRACT — OBJECT OF CONSTRUCTION — INTENTION OF PARTIES.—The real purpose of all the rules of construction is to ascertain and apply the intention of the parties to the contract to be construed.

ID.—DISCHARGING MERCHANDISE—OBLIGATIONS OF CONSIGNEE.—The consignee of merchandise has no right to delay the discharging of the ship but must be prepared to receive his goods at the ship's side and at the place where she is discharging as soon as they are ready to be discharged, and in these circumstances the steamship company has no right to deliver the goods to another person to be landed for account of the owner.

The facts are stated in the opinion.

*Messrs. Horton* and *Feliú* for appellants.

*Mr. José de Diego* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This case involves the proper construction and interpretation of a bill of lading. The appellants shipped from New York to Mayagüez by the New York & Porto Rico Steamship Co. certain articles of merchandise of the value of $2,284.38. The freight was prepaid in New York, and when the ship Coamo, which brought the goods, arrived in the bay at Mayagüez the appellants sent their own launches alongside the vessel, then at anchor in the roadstead, and demanded the delivery of the goods; but this the steamship company refused and delivered them to the respondent with other goods, and they were landed at the wharf by means of lighters, and charges were demanded from the appellants for landing them, amounting to $17.98. This the appellants refused to pay, and, on the dock company refusing to deliver the goods, brought suit for the same and damages for their detention. During the early stages of the controversy the parties adjusted the matter so that the goods were delivered and the rights of the litigants in the premises were left to be adjusted by the court. The goods were shipped on seven bills of lading of like tenor and effect, being on identical printed forms and each containing the same clause 5, which is the important one in this case, and which reads as follows:

"That the steamer may commence discharging immediately upon arrival, and discharge continuously the goods to be taken from the ship's tackle where the carrier's responsibility shall cease, and to be taken from alongside by the consignee immediately the vessel is ready to discharge, the agent or master of the steamer *to have the option* of hiring lightrs or craft at port of discharge for the landing of the goods at the expense and risk of the shipper, owner or consignee, all or any of them; and if the goods be not taken from the ship by the consignee directly they come to hand in discharging the steamer, all responsibility of ship or carrier therefor shall thereupon be ended, and the agent or master of the steamer shall have liberty, at the sole

risk, charge and expense of shipper, owner and consignee, all or any other, to enter and land the goods, put them in hulk, craft or store, deposit them in warehouse, or upon the company's or other wharf, or in public store, or permit them to lie where landed as the authorities of the port shall direct, or as may be customary, whereupon the goods shall be deemed to be delivered, the ship and carrier retaining a lien on the goods until the payment of all costs and charges incurred, and the goods to be subject to storage, wharfage and other charges. If by reason of the want or impossibility of obtaining lighters, or other conditions not due to the carrier's fault, in the master's opinion the steamer is likely to be detained beyond the time required under ordinary circumstances to discharge the within goods, or if the goods cannot be found, the steamer shall be at liberty to proceed on the voyage with the whole or any portion of the within goods remaining on board and to deliver them on the return trip or to forward them to destination from the first convenient port at which the steamer may subsequently call, at the risk and expense of the consignee, and the company shall not be responsible for damage or loss in consequence thereof. It is further stipulated and agreed that if the steamer discharge at wharf, consignee is to receive the goods at such wharf, and that if the company shall have delivered the goods to any other carrier to be transported to their destination the company's liability shall cease altogether upon such delivery."

The first question which arises in the construction of this clause of the bill of lading is set forth in the third of the errors assigned by the appellants in their brief, which reads substantially as follows:

"3d. That the court erred in deciding and adjudging that the ship, or its agents, had the option, privilege, or right to employ launches or lighters to unload the goods, for account of the consignee, even when he was ready and willing to take and receive them, at the side of the ship, at the beginning of the discharge."

We are cited, as authority in the interpretation of this clause in the bill of lading, to a decision of the Federal Court of Porto Rico, rendered on the 30th day of last March, in a case of *Pagán, López & Co.* v. *Fritze, Lundt & Co., Successors,* which is found attached to the record herein "*a los fines procedentes,*" or for what it is worth. In so far as the argu-

ments in the decision cited appeal to our judgment it will receive consideration, and we are glad to avail ourselves of such aid in the elucidation of difficult questions and have carefully considered the views set forth in the decision of that court. He says:

"That the true interpretation and meaning of said clause 5 gives the defendant, as agents of the ship owners, or to the master of steamships upon which merchandise is transported under such bills of lading the right of electing, upon arrival at any port, whether to provide lighters or other craft for the transportation of the same from ship to shore, or to deliver the same from the ship's tackles; that any other construction, in case of miscellaneous merchandise consigned to a considerable number of different persons, would be inconsistent with the duty of the carrier to furnish equal facilities to all patrons."

On a casual reading of the clause mentioned this interpretation might be deemed correct. It says in the earlier part of the provisions quoted that the agent or master of the steamer is to have the option of hiring lighters or craft at the port of discharge for the landing of goods at the expense and risk of the shipper, owner or consignee. But we cannot select an isolated part of the instrument and interpret it on the meaning of that alone, but must take the whole document and consider it altogether to arrive at the intention of the parties in making the contract which is to govern our decision of this case. Beal's Cardinal Rules, pp. 59, 60, 121, 206, 207, 309, 311 and the cases cited; 2 Parsons on Contracts, 501, 8th ed.; *Lindley* v. *Groff et al.,* 37 Minn., 338; *Field* v. *Leiter,* 118 Ill., 26 and 27.

The bill of lading also says that the goods are to be taken from the ship's tackle where the carrier's responsibility shall cease, and that they must be taken from alongside by the consignee immediately the vessel is ready to discharge. The said clause in the bill of lading further stipulates that if the goods be not taken from the ship by the consignee directly they come to hand in discharging the steamer, all responsibility of ship or carrier shall thereupon be ended and the

agent or master of the steamer shall have the liberty, at the sole risk, charge and expense of shipper, owner and consignee, all or any other, to enter and land the goods, put them in hulk, craft or store, deposit them in warehouse, or upon company's or other wharf, or in public store, or permit them to lie where landed as the authorities of the port may direct or as may be customary, whereupon the goods shall be deemed to be delivered.

The contract plainly implies or rather states that the owner of the goods or the consignee has the right to receive the goods from the carrier at the ship's tackle and alongside as soon as the vessel is ready to discharge, and preserves to the master or agent of the ship the right to hire lighters to land them if they be not taken from the ship by the consignee as soon as they come to hand in unloading the steamer. The contract must be so construed as to preserve to each of the contracting parties the rights which have been conceded by one to the other in the instrument itself. To give to the master or agent of the ship the option to hire lighters to take off the goods when the owner is present alongside with his own craft ready to receive them directly they come to hand in discharging the ship and ready to take them from the ship's tackle would be to nullify all that part of the contract which gives any right to the consignee whatever.

The ultimate object of all rules of construction is to discover and carry out the true intent of the makers in executing the instrument which is presented for interpretation. *Dist. Tp. of City of D.* v. *City of Dubuque,* 7 Iowa, 262; Beal's Cardinal Rules, pp. 60, 121, 207, 309 and the English cases there cited.

To so nullify the contract cannot be deemed the intention of the contracting parties, and the bill of lading should not be so interpreted. The option reserved to the master or agent of the steamer was not intended to be exercised except in cases where the owner or consignee of the goods failed to appear alongside of the ship ready to receive the goods at the

ship's tackle directly they might come to hand in discharging the vessel. The consignee of the goods has no right to delay the ship in discharging, and he must receive his goods when they are reached and ready to be delivered alongside at the tackle; but when he is there ready and demanding his goods the ship's officers have no right to deliver them to some one else to be transported to the shore at the expense of the owner. This construction of the bill of lading is fair and just to both parties and carries out their intention in making the contract. Then we must find that the third specification of error is well founded, and this error permeates and controls the entire decision and judgment rendered by the trial court. Taking this view of the bill of lading and finding that the trial court has fallen into a fundamental error in the interpretation put upon the contract which is the basis of the rights claimed by both parties, it is unnecessary to examine the other specifications of error made by appellant as they become immaterial. Under the proper construction of clause 5 of the bill of lading the judgment of the trial court should be reversed and the cause should be remanded to the court below in order that said court may proceed to dictate another judgment, in accordance with the principles set forth in this opinion, and to decide upon the damages claimed by the plaintiffs according to the merits of the evidence adduced in the suit.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.